**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JAYADEEP RAMESH DESHMUKH,

Appellant,

v.

UNITED STATES TRUSTEE OFFICE,

Appellee.

Civil Action No. 25-4017 (MAS)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon pro se Appellant Jayadeep Ramesh Deshmukh's ("Appellant") Motion for an Emergency Temporary Restraining Order ("TRO"). (ECF No. 7.) The United States Trustee Office ("Appellee") opposed (ECF No. 12), and Appellant replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court denies Appellant's Motion.

## I.    BACKGROUND

On April 29, 2024, Appellant filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). (*See generally* Appellant's Voluntary Petition, Bankr. ECF No. 1[1].) Included among his assets was a property at 458 Cherry Hill Road, Princeton, New Jersey, that he co-owned with his estranged wife as tenants

---

[1] Citations to the bankruptcy docket refer to the Chapter 11 bankruptcy petition, No. 24-14339, unless otherwise specified.

in the entirety (the "Property"). (Appellant's Form 106A/B 3, Bankr. ECF No. 19.) Appellant valued the Property at over $2.7 million. (*Id.*)

On December 30, 2024, Appellant filed a reorganization plan that was to be funded by the sale of the Property and income from a prospective job. (Appellant's Ch. 11 Combined Plan of Reorganization and Disclosure Statement § 2.4, Bankr. ECF No. 64; Appellant's Ch. 11 Combined Plan of Reorganization and Disclosure Statement Schedule I, Bankr. ECF No. 64-1.) Objections to the plan were interposed by several parties in interest, including the Internal Revenue Service, secured creditors, Appellant's estranged spouse (who asserted a domestic support obligation claim in the amount of $440,000), and Appellee. (*See* Bankr. ECF Nos. 73, 74, 77, 79, 81, 83.)

On March 19, 2025, Appellee filed a Motion to Convert the Case to a Chapter 7 Case, or, in the alternative, to Dismiss the Case ("Motion to Convert").[2] (*See generally* Mot. to Convert, Bankr. ECF No. 98.) Appellant did not oppose the motion. On March 20, 2025, the Bankruptcy Court held a hearing on Appellant's December 30, 2024 reorganization plan and found it was unconfirmable. (Tr. of Hr'g on Mot. for Relief from Stay at 4:24-25, 5:3-5, Bankr. ECF No. 147.) At this same hearing, the Bankruptcy Court postponed the hearing on the Motion to Convert to a later date. (*Id.* at 7:5-7.)

On March 22, 2025, the Bankruptcy Court issued notice for a hearing on the Motion to Convert scheduled for April 24, 2025. (Notice of Hr'g on Mot. to Convert 1, Bankr. ECF No. 99.) The Bankruptcy Court ultimately held the hearing on Appellee's Motion to Convert on April 25, 2025. (Tr. of Hr'g on Mot. to Convert 1, Bankr. ECF No. 135.) Three days after this hearing, the

---

[2] In its Motion before the Bankruptcy Court, the Appellee argued that: (1) Appellant's plan was not feasible and so could not be confirmed; (2) Appellant was unemployed, and his monthly operating reports showed insufficient cash flow to pay his post-petition obligations; and (3) Appellant had not made any post-petition mortgage payments on his residence, causing Wells Fargo to seek relief from the automatic stay. (*See generally* Bankr. ECF No. 98-2.)

Bankruptcy Court granted the Motion to Convert ("Conversion Order"). (*See generally* Conversion Order, Bankr. ECF No. 113.) On May 8, 2025, Appellant appealed the Conversion Order to this Court. (*See generally* Notice of Appeal and Statement of Election, ECF No. 1.)

On May 15, 2025 and May 18, 2025, Appellant filed a Motion to Stay (ECF No. 3) and a Motion for a TRO (ECF No. 4), respectively, with this Court. The Court denied these motions on May 19, 2025 as procedurally deficient because they were not filed before the Bankruptcy Court in the first instance. (Text Order, ECF No. 5.) Appellant then filed a Motion for an Emergency TRO with the Bankruptcy Court ("Bankruptcy Court TRO Motion") on May 19, 2025 (Bankruptcy Court TRO 1, Bankr. ECF No. 146), which the Bankruptcy Court expressed was procedurally deficient and would be construed as a motion to stay pending appeal (Appellant's Withdrawal of Mot. for Stay 1, Bankr. ECF No. 157). Appellant withdrew the Bankruptcy Court TRO Motion on June 3, 2025. (*Id.*)

On May 27, 2025, Appellant returned to this Court and filed a Motion for an Emergency TRO ("Emergent TRO Motion"). (Mot. for Emergency TRO 1, ECF No. 7.) Appellee opposed (Appellee's Opp'n Br. 1, ECF No. 12), and Appellant replied (Appellant's Reply Br. 1, ECF No. 13). The Emergent TRO Motion is now ripe for review.

## II.   LEGAL STANDARDS

### A.   Motion for a TRO

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). A preliminary injunction or TRO[3] may be granted

---

[3] A request for a TRO is subject to the same standard as a request for a preliminary injunction. *See Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 730-31 (3d Cir. 2009).

only if a plaintiff establishes that: (1) "[he is] likely to succeed on the merits of [his] claims"; (2) "[he is] likely to suffer irreparable harm without relief"; (3) "the balance of harms favors [him]"; and (4) "relief is in the public interest." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017) (citation omitted). "A plaintiff's failure to establish any element in [his] favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) (citation omitted).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.").

**B.    Appellate Standard of Review**

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a). The standard of review for bankruptcy court decisions is "determined by the nature of the issues presented on appeal." *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005).[4] Legal conclusions of the

---

[4] The decision to convert or dismiss a Chapter 11 petition is reviewed for abuse of discretion. *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999).

bankruptcy court are subject to de novo or plenary review by the district court. *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997). Comparatively, findings of fact are not set aside unless "clearly erroneous." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). If it is alleged that the bankruptcy court abused its discretionary authority, the district court may only inquire whether the bankruptcy court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *Int'l Union, UAW v. Mack Trucks, Inc.*, 820 F.2d 91, 95 (3d Cir. 1987).

III.    **DISCUSSION**

Appellant purports to seek injunctive relief pursuant to Federal Rule of Civil Procedure 65.[5] (*See generally* Appellant's Moving Br., ECF No. 7-1.) More specifically, Appellant seeks an emergent TRO to: (1) block the enforcement of the Conversion Order; (2) require the Bankruptcy Court to update the Conversion Order; (3) require the Bankruptcy Court to reconsider appointment of a Chapter 11 trustee; and (4) block the listing of the Property for sale.[6] (*Id.* at 2.)

---

[5] All references to "Civil Rule" or "Civil Rules" hereafter refer to the Federal Rules of Civil Procedure.

[6] In his Motion, Appellant requests, in part, that this Court order Judge Kaplan to issue "an [o]rder consistent with due process, making [f]indings of [f]act, establishing cause to convert from Ch[apter] 11 to Ch[apter] 7, . . . considering whether 'unusual circumstances' are present to deny conversion, . . . considering the appointment of a Ch[apter] 11 [t]rustee . . . [and] ordering Ruggeri Realty to remove any and all listing(s) of the [Property]." (Mot. for Emergency TRO 1.) Because the relief sought is duplicative and redundant of the order being appealed, the Court declines to address Appellant's arguments as they pertain to the relief sought. It would be premature to "order" anything other than staying the effect of the Conversion Order. As such, the Court will only consider Appellant's request as it pertains to the stay of enforcement of the Conversion Order.

A.      **Motion for a TRO**

As a preliminary point, Appellant's request for a TRO is procedurally deficient. Civil Rule 65 governs preliminary injunctions and contemplates the filing of a complaint. *See* Fed. R. Civ. P. 65. Because there is no complaint for injunctive relief filed by Appellant pending before this Court, Civil Rule 65 is inapplicable in the instant case. Rather, because this is a bankruptcy appeal, it is "[t]he [Federal Rules of Bankruptcy Procedure] and Forms [that] govern procedure in cases under [the Bankruptcy] Code."[7] Fed. R. Bankr. P. 1001, Advisory Committee Note (2024). This general rule applies even in the district courts—the Civil Rules are applicable in appeals to the district court from bankruptcy court orders only "to the extent provided by the [Bankruptcy Rules]." Fed. R. Civ. P. 81(a)(2). Although Bankruptcy Rule 7065 makes Civil Rule 65 applicable to "adversary proceedings," which must be brought in the main bankruptcy case by filing a complaint (*see* Bankruptcy Rules 7001 and 7003), it is not made applicable to "contested matters" that may be brought by motion (*see* Bankruptcy Rule 9014(c)). Thus, to the extent that Appellant seeks a TRO, he must seek it through an adversary proceeding in the Bankruptcy Court.[8]

---

[7] All references to "Bankruptcy Rule" or "Bankruptcy Rules" hereafter refer to the Federal Rules of Bankruptcy Procedure.

[8] Injunctive relief by way of TRO in the Bankruptcy Court must be pursued through an adversary proceeding. Fed. R. Bankr. P. 7001(g); *see also In re The Fairchild Corp.*, No. 09-10899, 2009 WL 4546581, at *7 (Bankr. D. Del. Dec. 1, 2009) (stating that entry of injunctive relief requires initiation of an adversary proceeding).

Given Appellant's pro se status,[9] the Court construes Appellant's request for a TRO as a motion to stay the Conversion Order pending appeal.[10] Even liberally construing Appellant's motion as a motion to stay, the Court finds that it is still procedurally deficient. Under Bankruptcy Rule 8007(a), "a party must move first in the bankruptcy court for . . . a stay of the bankruptcy court's judgment, order, or decree pending appeal." Fed. R. Bankr. P. 8007(a). Only if bringing the motion in the bankruptcy court is impracticable, or if the bankruptcy court has failed to rule on the motion seeking a stay, may the movant bring the motion to the district court before giving the bankruptcy court an opportunity to consider the relief sought. *See* Fed. R. Bankr. P. 8007(b)(2)(A)-(B); *see also Family Kingdom, Inc., v. EMIF N.J. Ltd. P'ship*, 225 B.R. 67, 70 (D.N.J. 1998) ("Only then may a party move for a stay in the district court, provided that 'the motion [shows] why the relief . . . was not obtained from the bankruptcy judge.'").

---

[9] The Court notes that, based on publicly available bar records, it appears that Appellant is an attorney licensed to practice law in New Jersey. (*See* ECF No. 15 at 8.) It is well-settled that attorney pro se litigants are "not accorded the same consideration as pro se litigants who lack substantial legal training." *Turner v. N.J. State Police*, No. 08-5163, 2017 WL 1190917, at *7 (D.N.J. Mar. 29, 2017) (citations omitted). While Appellant contends that it was "preposterous" and "difficult to navigate" the procedural process as a "pro se [Appellant]," the Court notes that as an attorney, Appellant is not entitled to the same lenience afforded to unrepresented, pro se litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (explaining that even non-attorney pro se litigants "must abide by the same rules that apply to all other litigants").

[10] The relief sought by Appellant is not appropriately filed as a TRO, but as a stay pending appeal through Bankruptcy Rule 8007. *See, e.g., In re Revel AC, Inc.*, 802 F.3d 558, 567-68 (3d Cir. 2015) ("Under [Bankruptcy Rule] 8007, a party can move to stay the effect of a bankruptcy court order pending a resolution on appeal."). And, such a motion avoids the need to file in an adversary proceeding under Bankruptcy Rules 7001(g) and 7003. *See* Fed. R. Bankr. P. 7001, 7003.

Here, Appellant has not filed his motion in the Bankruptcy Court in the first instance.[11] Appellant must, therefore, show that it was impracticable to do so. *See* Fed. R. Bankr. P. 8007(b)(2). Appellant suggests it was impracticable to first file his motion before the Bankruptcy Court by way of adversary proceeding because it "would take an inordinate amount of time."[12] (ECF No. 6, ¶ 4.) This assumption, however, is not a sufficient reason to circumvent the appropriate procedural process. *In re Strong*, No. 17-50646, 2018 WL 936103, at *3 (D. Del. Feb. 14, 2018) (finding that an appellant's assumption that the bankruptcy court would rule against him was not a sufficient reason to seek a stay in the first instance in the district court).

Because Appellant fails to show that he moved for a stay and/or TRO in the Bankruptcy Court in the first instance or that it was impracticable to do so, the Court finds that his motion is procedurally improper. *See* Fed. R. Bankr. P. 8007(b)(2)(A)-(B). While that error alone is dispositive of Appellant's motion,[13] the Court nonetheless considers the merits of Appellant's motion and finds that the relief Appellant seeks is not warranted.

---

[11] The Bankruptcy Court notified Appellant that it would not entertain the Bankruptcy Court TRO Motion because it had to be sought in an adversary proceeding. (Appellee's Opp'n Br. 6.) The Bankruptcy Court further informed "the parties that it would consider the motion to be a motion for a stay pending appeal under Bankruptcy Rule 8017(a)(1)(A), and scheduled a hearing for June 5, 2025." (*Id.*) After Appellee filed an objection to the requested relief (Bankr. ECF No. 156), Appellant withdrew the Bankruptcy Court TRO Motion on June 3, 2025 (Bankr. ECF No. 157), rather than proceeding with the hearing. Appellant thus never formally filed a motion for a stay in the Bankruptcy Court in the first instance. Moreover, Appellant fails to show impracticability as required under Bankruptcy Rule 8007(b)(2)(A)-(B).

[12] The Court notes that Appellant, in arguing impracticability, stated that his argument only applies to his motion for a TRO and not to his motion for a stay. (ECF No. 6, ¶ 2 ("This showing applies only in regards to the TRO motion and not to the Motion for a Stay.").) Out of an abundance of caution, the Court considers his argument as to motions for a TRO and stay pending appeal.

[13] "[D]istrict courts routinely dismiss motions for a stay pending appeal when, as here, relief is not first requested from the bankruptcy judge and the failure to do so is not adequately explained." *In re Carrington*, 698 F. Supp. 3d 659, 661 (S.D.N.Y. 2023) (quotations omitted).

**B.      Motion for a Stay**[14]

The appeal challenges the Conversion Order, which converts the case from a Chapter 11 to a Chapter 7 case. (Notice of Appeal and Statement of Election 4.) Appellant advances two primary grounds on which he contends that legal error was made. (*See generally* Appellant's Moving Br.) Specifically, Appellant argues that: (1) he was not afforded due process because he did not have notice; and (2) the Bankruptcy Court did not issue findings of fact before it entered the Conversion Order.[15] (*See id.* at 1-2.)

"Under [Bankruptcy Rule] 8007, a party can move to stay the effect of a bankruptcy court order pending a resolution on appeal." *Revel*, 802 F.3d at 567-68; *see also* Fed. R. Bankr. P. 8007. "The granting of a motion for stay pending appeal[, however,] is discretionary with the court." *In re Trans World Airlines, Inc.*, No. 01-56, 2001 WL 1820325, at *2 (Bankr. D. Del. Mar. 27, 2001). That said, a stay pending appeal is an "extraordinary remedy." *In re W.R. Grace & Co.*, 475 B.R. 34, 205 (D. Del. 2012) (citing *United States v. Cianfrani*, 573 F.2d 835, 846 (3d Cir. 1978)). When considering a stay related to a bankruptcy appeal, courts apply a standard of review akin to that of a preliminary injunction, and analyze the following factors:

> (1) whether the stay applicant has made a strong showing that [he] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether [the] issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Revel*, 802 F.3d at 568 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

---

[14] The same analysis applies if the motion is evaluated as a request for a temporary restraining order, preliminary injunction, or stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

[15] Specifically, Appellant argues that the Bankruptcy Court did not issue findings of fact on: (1) cause under Section 1112(b); (2) any "unusual circumstances" for purposes of Section 1112(b); and (3) the consideration of the appointment of a Chapter 11 trustee. (*See generally* Mot. for Emergency TRO.)

While courts must "consider the relative strength of the four factors," *id.* (quoting *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011)), the first two factors are the most critical to the analysis. *Id.* (internal citations omitted). For the first factor, "a sufficient degree of success for a strong showing exists if there is 'a reasonable chance, or probability, of winning.'" *Id.* at 568-69 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc)). For the second factor, "the applicant must 'demonstrate that irreparable injury is likely [not merely possible] in the absence of [a] [stay].'" *Id.* at 569 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). If an appellant satisfies the first two factors, the court will weigh any harm to the opposing party and consider the public interest. *Id.* (citing *Nken*, 556 U.S. at 435). These factors are examined as a "sliding scale," in that all four stay factors are interconnected, and the analysis proceeds as follows:

> "Did the applicant make a sufficient showing that [(1)] [he] can win on the merits[—]significantly better than negligible but not greater than 50%[—]and [(2)] will suffer irreparable harm absent a stay? If [he] has, we balance the relative harms considering all four factors using a sliding[-]scale approach. However, if the movant does not make the requisite showings on either of these [first] two factors, the[] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis."

*S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019) (quoting *Revel*, 802 F.3d at 571) (internal quotation marks omitted).

### 1.    *Likelihood of Success on the Merits*

To show a likelihood of success, Appellant must show "a reasonable chance, or probability, of winning." *Revel*, 802 F.3d at 568 (quoting *Singer Mgmt. Consultants,* 650 F.3d at 229). So, while Appellant must show that his chance of success is more than negligible, he need not show that it is more likely than not that his appeal will be successful. *See id.* at 569 (citing *Nken*, 556 U.S. at 434 and *Singer Mgmt. Consultants*, 650 F.3d at 229).

"The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case." *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515 (8th Cir. 2004) (*cited with approval in In re Prosser*, 388 F. App'x 99, 99-100 (3d Cir. 2010)). In order to convert or dismiss a Chapter 11 case, the bankruptcy court must: (1) issue notice and provide an opportunity to be heard; (2) demonstrate cause; and (3) proceed with the action in the best interests of creditors and the estate. 11 U.S.C. § 1112(b); *see also In re Am. Cap. Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012) ("Section 1112(b) requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on 'the best interest of creditors and the estate.'"). An order converting a bankruptcy case for cause is reviewed for abuse of discretion. *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999). A bankruptcy court abuses its discretion when it bases its decision on an erroneous conclusion of law or when the record contains no evidence on which it could rationally base its decision. *See id.* Against this standard, Appellant has not shown that his chance of success on appeal is more than negligible.

At the outset, the Court finds that Appellant is unlikely to succeed on the merits because he failed to raise the majority of his concerns before the Bankruptcy Court and thus did not preserve his arguments for appeal. An appellate court will not generally consider issues on appeal

that were not raised sufficiently in the proceedings for the lower court to rule on them. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is [a] general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Here, Appellant did not argue before the Bankruptcy Court that: (1) he was not afforded due process; (2) cause did not exist under Section 1112(b); (3) "unusual circumstances" existed; or (4) a Chapter 11 trustee should be appointed instead of converting the case to Chapter 7.[16] Rather, Appellant argued that his case should be dismissed rather than converted. (Tr. of Hr'g on Mot. to Convert at 5:5-6.) Thus, the only issue Appellant preserved for appeal was whether conversion or dismissal was warranted on the record. As such, Appellant forfeited his arguments pertaining to whether: (1) he was afforded due process; (2) the Bankruptcy Court found cause under Section 1112(b); (3) the Bankruptcy Court should have found "unusual circumstances" and kept the case in Chapter 11 pursuant to Section 1112(b)(2); and (4) the Bankruptcy Court should have appointed a Chapter 11 trustee instead of converting the case to Chapter 7. *See Singleton*, 428 U.S. at 120. Out of an abundance of caution, however, the Court will address Appellant's arguments as they pertain to those issues.

### a.    Notice

"Due process requires notice that is 'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a response." *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (quoting *Greyhound Lines, Inc. v. Rogers* (*In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 735 (5th Cir.1995)). The court must give "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). This is satisfied where the

---

[16] The Bankruptcy Court had no opportunity to rule on these issues because Appellant never raised them at a point at which the Bankruptcy Court had jurisdiction to decide them.

court issues a scheduling order scheduling the matter at least six days in advance and ultimately conducts a hearing. *See In re Am. Cap. Equip.*, 688 F.3d at 161 (finding notice satisfied where the court issued an order scheduling a hearing five weeks in advance stating the issue for consideration); *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 98 (3d Cir. 2011) (finding notice satisfied where the court issued an order six days in advance of the scheduled hearing listing out specific concerns); *In re Alston*, 756 F. App'x 160, 163 (3d Cir. 2019) (finding creditors' detailed objections sufficient to put debtor on notice of inadequacies).

Here, Appellant fails to meet his burden in demonstrating likelihood of success on his due process argument. Appellant's argument ignores the fact that the Bankruptcy Court issued notice of the hearing a full month before the hearing took place. (*See generally* Notice of Hr'g on Mot. to Convert; Tr. of Hr'g on Mot. to Convert.) The notice itself apprised Appellant that conversion of the case was at issue. (Notice of Hr'g on Mot. to Convert Case 1.) Appellant had a month to prepare for the Chapter 11 conversion hearing. (*See generally* Notice of Hr'g on Mot. to Convert; Tr. of Hr'g on Mot. to Convert.) Moreover, Appellant did not ask for additional time or additional notice. *See Sec'y U.S. Dep't of Lab. v. Koresko*, 726 F. App'x 127, 133 (3d Cir. 2018) (party who "received adequate notice" of a contempt hearing yet "chose not to attend" or "object in writing" could not subsequently assert due process challenge). In light of the foregoing, Appellant's due process challenge is unlikely to succeed on the merits.

### b.    Cause

Cause is "subject to judicial discretion under the circumstances of each case." *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (*cited with approval in In re Am. Cap. Equip.*, 688 F.3d at 161). It is not limited to the list of enumerated examples included in Title 11. 11 U.S.C. § 102(3) ("'Includes' and 'including' are not limiting."); *SGL Carbon*, 200 F.3d at 160 ("[T]hose

factors are not exhaustive and . . . a court may consider whether other facts and circumstances qualify as 'cause.'"); *see also* 11 U.S.C. § 1112(b)(4)(A)-(P) (listing situations that qualify as cause); *In re Am. Cap. Equip.*, 688 F.3d at 162 (finding cause to convert a Chapter 11 case where debtor was unable to propose a plan not contingent on future litigation).

Here, Appellant fails to show a likelihood of success of establishing that the Bankruptcy Court abused its discretion in finding that cause existed under Section 1112(b). At the hearing on the motion to convert, the Bankruptcy Court opined that "essentially [Appellant's] case as a Chapter 11, both legally and factually, was going nowhere," that "[t]he oversight over the [P]roperty [wa]s . . . of concern to the [Bankruptcy C]ourt," and that "[i]t would be a disservice to the creditor community in this case if the [Bankruptcy C]ourt was simply to allow the [Appellant] to continue outside of the bankruptcy what has continued as part of the Chapter 11." (Tr. of Hr'g on Mot. to Convert at 4:9-10, 7:3-4, 7:10-13.) This record raises several of the Section 1112(b)(4) enumerated causes, including "gross mismanagement of the estate" and "inability to effectuate substantial consummation of a confirmed plan." 11 U.S.C. § 1112(b)(4). Moreover, the record reveals that the proposed plan was "not confirmable" because it "appear[ed] to be too speculative and infeasible." (Tr. of Hr'g on Mot. for Relief from Stay at 4:24-25, 5:3-5.)[17] While the word "cause" was not explicitly used, the inability to propose a confirmable plan has been found sufficient cause to convert. *In re Am. Cap. Equip.*, 688 F.3d at 162. The Court, accordingly, finds that Appellant has failed to demonstrate likelihood of success on this ground.

---

[17] To the extent that Appellant argues that there were no findings of fact, the Bankruptcy Court's finding that the proposed plan was unconfirmable is a finding of fact that is in itself sufficient to establish cause for conversion. *See In re Am Cap. Equip.*, 688 F.3d at 162.

c.       **Interests of the Estate and the Creditors**

"[O]nce cause is found, the burden shifts to the opposing party to show why dismissal or conversion would not be in the best interests of the estate and the creditors." *In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x at 97.[18] Put simply, once the Bankruptcy Court found cause under Section 1112, the burden shifted to Appellant to prove each part of Section 1112(b)(2) and demonstrate that his case presented "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." *See id.* at 98; 11 U.S.C. § 1112(b)(2). Appellant failed to do so. Rather, Appellant stated, during the motion to convert hearing, that "the best thing to do would be to dismiss the bankruptcy." (Tr. of Hr'g on Mot. to Convert at 5:5-6.)

To avoid conversion or dismissal, any party in interest must: (1) identify specific unusual circumstances; (2) establish a reasonable likelihood that a plan will be timely confirmed; and (3) demonstrate that the grounds for conversion or dismissal are a reasonably justifiable omission by the debtor-appellant that can be cured within a reasonable time period. 11 U.S.C. § 1112(b)(2). The unusual circumstances must "establish[] that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2); *see also Alston*, 756 F. App'x at 165 (finding testimony about debtor's inability to find employment and need to care for elderly mother insufficient because they do not bear on the best interests of the creditors and the estate).

Here, Appellant fails to meet his burden in demonstrating likelihood of success on appeal regarding his arguments pertaining to conversion. That is, Appellant fails to show a likelihood of success on his arguments that the Bankruptcy Court should have: (1) found "unusual

---

[18] Subsection (b)(2) of § 1112 provides that even if cause exists, the bankruptcy court may not convert or dismiss a case "if the court finds and specifically identifies unusual circumstances" and other conditions, including the likelihood of a timely confirmed plan, are satisfied.

circumstances"; and (2) appointed a Chapter 11 trustee instead of converting to Chapter 7. When, as in this case, cause exists, whether to order conversion or dismissal is determined in the sound discretion of the Bankruptcy Court based upon the circumstances of the case. *See In re Maloney*, No. 11-40584, 2012 WL 1299842, at *5 (Bankr. D.N.J. Apr. 16, 2012). The Bankruptcy Court made several findings with regard to the best interests of creditors, including that "[t]he best way to ensure that the creditors that have an interest in the property and in the estate and potential equity in the property can best be protected in th[e Bankruptcy C]ourt's view [is] only by the appointment of an independent fiduciary" and that "[i]t would be a disservice to the creditor community in this case if the [Bankruptcy C]ourt was simply to allow the [Appellant] to continue outside of the bankruptcy what has continued as part of the Chapter 11." (Tr. of Hr'g on Mot. to Convert at 7:4 -8, 7:10-13.) Ultimately, the Bankruptcy Court found conversion preferable and opined that it "d[id]n't see the need for a Chapter 11 Trustee." (Tr. of Hr'g on Mot. to Convert at 7:14.) Appellant has not pointed to any unusual circumstances to prevent conversion that he raised before the Bankruptcy Court—let alone unusual circumstances demonstrating that converting his case was not in the best interests of creditors and the estate. Moreover, in addition to showing the existence of "unusual circumstance," to keep Appellant's Bankruptcy in Chapter 11, he had the burden under Section 1112(b)(2)(A) to prove that "there [wa]s a reasonable likelihood that a plan will be confirmed within . . . a reasonable period of time." *See Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 176 (B.A.P. 1st Cir. 2016). Appellant did not attempt to make that showing.[19]

---

[19] Moreover, the Bankruptcy Court determined that Appellant could not propose a confirmable plan. (*See* Tr. of Hr'g on Mot. for Relief from Stay at 4:24-25, 5:3-5.)

To the extent Appellant argues that the Bankruptcy Court should have dismissed his bankruptcy rather than converted it, Appellant does not identify any error in the Bankruptcy Court's conclusion. *See Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 138 (3d Cir. 1982) ("[W]hen reviewing the discretionary decisions of the bankruptcy court, an appellate court does not have wide latitude to substitute its own judgment for the factual findings of such a court."). As such, Appellant fails to show a likelihood of success that the Conversion Order will be reversed on appeal because the Bankruptcy Court abused its discretion. In light of the foregoing, none of Appellant's arguments demonstrate a "significantly better than negligible" likelihood that he will be successful on appeal. *Revel*, 802 F.3d at 571.

Because Appellant fails to make the requisite showings on either likelihood of success on the merits or irreparable harm, the Court does not analyze the remaining factors of the analysis. *See Revel*, 802 F.3d at 571 (explaining that where a movant fails to make the requisite showings on either of the first two factors, "the [] inquiry into the balance of harms [and the public interest] is unnecessary, and the stay should be denied without further analysis").

### 2.    *Irreparable Harm*

Although the Court need not address the remaining factors, the Court briefly notes that even if Appellant were able to demonstrate likelihood of success on appeal, Appellant fails to demonstrate irreparable harm absent a stay. "[S]imply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). Rather, plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. This means that harm must be "neither remote nor speculative, but actual and imminent." *Revel*, 802 F.3d at 571 (internal quotations

omitted). Notably, "[e]conomic loss does not constitute irreparable harm." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994).

Here, the only conceivable harm that Appellant suffers is that a sale by a Chapter 7 trustee might result in a sale price in an amount less than what Appellant thinks the Property is worth.[20] This, however, is insufficient to establish irreparable harm because it is too speculative. Furthermore, any potential economic loss from a sale of the Property below value would be purely monetary and therefore not constitute irreparable harm. *See Acierno*, 40 F.3d at 653. As such, Appellant has not shown that denying the stay will cause him irreparable harm.

Because Appellant fails to establish a likelihood of success on appeal and that he would be irreparably injured absent a stay, the last two factors need not be addressed. *See Reilly*, 858 F.3d at 179.

## IV.    **CONCLUSION**

For the reasons set forth above, the Court denies Appellant's Motion. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[20] Appellant also argues that he will be irreparably harmed in the absence of a stay because he will be denied the opportunity to accommodate his wife and her mother, who reside at the Property. This argument, however, does not rise to the level of irreparable harm required for a stay. In any event, Appellant had at least a week between the lift of the stays on April 25, 2025 (Tr. of Hr'g on Mot. to Convert at 7:15-16) and when the showings began in May 2025 (ECF No. 14 at 6) to accommodate his sick mother-in-law. Beyond this, Appellant "has had the benefit of months in bankruptcy to try to address the issues." (Tr. of Hr'g on Mot. to Convert at 7:9-10.) Finally, the Bankruptcy Court did not promise accommodations, as Appellant contends (Appellant's Mem. 5), but suggested that the potential to revisit the issues of stays "should also afford [Appellant] and his mother-in-law an opportunity to address a reasonable time to relocate." (Tr. of Hr'g on Mot. to Convert at 8:3-5.)